BEER, Judge.
Appellants, Imperial Enterprise, Inc. (“Imperial”), Newsome’s Demolishing Co., Inc. (“Newsome’s”) and The Travelers Insurance Company, seek reduction of a judgment in the amount of $36,900 plus interest and costs, rendered (without written reasons) in favor of appellee, Twi-Ro-Pa Mills Agency, Inc. (“Twi-Ro-Pa”), for damages resulting from the weakening and exposure of a common wall between buildings owned respectively by Twi-Ro-Pa and Imperial. In its Answer to Appeal, Twi-Ro-Pa seeks an increase in the judgment by $31,500 for “loss of rentals.” By stipulation, the issues are limited to quantum.
The common wall existed between, was shared by and formed a part of both buildings. In February, 1974, Twi-Ro-Pa moved to a new business location but continued as owner of the building here involved. Shortly thereafter, Imperial contracted with Newsome’s to demolish certain of its buildings fronting on Tchoupitoulas Street, including the building next to the one formerly occupied and still owned by Twi-Ro-Pa.
As a result of the completed dismantlement of Imperial’s building, Twi-Ro-Pa’s building sustained damages principally described as structural weakness in and deterioration of the common wall. Appellants contend, however, that the deteriorated condition of the common wall antedated the demolition of the abutting building and further contend that the trial court erred in failing to recognize that Twi-Ro-Pa did nothing to mitigate its damages by correcting the vulnerable condition of the wall after the demolition of Imperial’s adjoining building.
At the trial, Mr. Jared Palmer, president of Twi-Ro-Pa, testified that Twi-Ro-Pa was not able to repair the building for financial reasons and that the company was unable to rent or sell the property due to the delapidated condition of the common wall after demolition of Imperial’s building.
Mr. Edward R. Morphy, a consulting engineer, visited the property on several occasions at an early stage in the demolition procedure and described the common wall as being “in extremely poor condition.” He recommended, prior to demolition, that the wall be either rebuilt or braced. Testifying as an expert structural civil engineer, Mr. Morphy expressed the view that “the lateral stability of the (common) wall was provided for by the joists and floor system of *1185 the Imperial side building, . . .’’He asserted that the common wall, as it stood at the time of trial, was “unsafe” and in imminent danger of collapse.
Mr. Fred L. Liebkemann, expert in mechanical and structural engineering, testified that once the Imperial building had been removed, the common wall was free of restraint on one side which allowed it to move away from the Twi-Ro-Pa building. He observed that “there is evidence that the wall has started moving in that direction.” Mr. Liebkemann concluded that the repairs were necessitated by the demolition of the Imperial building. At the time of the trial, Mr. Liebkemann expressed the view that the wall was in “extremely dangerous condition,” and violative of the Building Code of the City of New Orleans. Mr. Liebkemann agreed with the proposal of Mr. Morphy that “tie-ins” of the walls to the floor system of Twi-Ro-Pa’s building would be the most feasible mode of repair.
In a June 27, 1974 report made to Twi-Ro-Pa several days after his inspection of the property, Mr. William B. Haensel, Jr., vice-president of J. J. Krebs & Sons, Inc. (civil engineers), noted, upon visual inspection, that recent movements in the common wall necessitated the following repairs:
1. Clean and fill all cracks in the brick wall with a rich cement mortar mix.
2. Replace all missing and/or damaged bricks.
3. Anchor every fifth floor joist to the walls on each side of the building thus providing lateral support for the deteriorated wall.
4. Apply a cement plaster coating on the new exterior face of the wall between 325 and 327 Tchoupitoulas St. for moisture control.
In Mr. Haensel’s opinion, these repairs, with the exception of the cracks, were a result of the demolition of Imperial’s building.
Herman J. Abry, president of Abry Brothers, Inc. (contractors), qualified as an expert in structural shoring and repairs, and testified, pursuant to a report made on April 30,1975, that he visually inspected the subject property and estimated the cost of installing the necessary wall ties, as recommended by Mr. Morphy, to be $27,200. Mr. Liebkemann, whose testimony was noted above, corroborated the fact that Mr. Abry’s estimate of needed repairs was necessary to meet Building Code requirements.
Twi-Ro-Pa additionally called Richard E. Volker, vice-president of Southeast Distributors, Inc. (a waterproofing firm), as an expert waterproofer. Mr. Volker estimated the cost of masonry repairs, sandblasting and waterproofing the exterior wall to be $9,700.
The condition of Twi-Ro-Pa’s building came to the attention of municipal authorities including the Department of Safety and Permits and the Fire Prevention Division of the New Orleans Fire Department. Twi-Ro-Pa was ordered to remedy the dangerous and unsafe condition extant after the demolition.
In Coleman v. Victor, 326 So.2d 344 (La., 1976), the Supreme Court stated:
“When property is damaged through the legal fault of another, the primary objective is to restore the property as nearly as possible to the state it was in immediately preceding the damage, it is well settled that the measure of damage is the cost of restoring the property to its former condition. In assessing damage to property, generally, courts have considered the cost of restoration as the proper measure of damage where the thing damaged can be adequately repaired. Intermediate appellate courts have often attempted to formulate tests in assessing damage to property. In our view, no mechanical rule can be applied with exactitude in the assessment of property damage under article 2315. Each case must rest on its own facts and circumstances as supported by the proof in the record.” (Footnotes omitted.)
The repair estimates submitted by Messrs. Abry and Volker were, apparently, reasonable costs of restoration under existent circumstances. Appellants point to no evidence to contravene this conclusion. Even though the trial court’s award may *1186 result in a partial windfall to Twi-Ro-Pa if they are able to sell the land and demolish the building, we find no manifest error in the methodology seemingly applied to the quantum determination.
Other than Mr. Palmer’s self-serving statement that Twi-Ro-Pa has been unable to rent the subject property, the record is bare of evidence supportive of appellee’s claim for loss of rentals, and, likewise, we find no manifest error in the trial court’s rejection of this claim.
Accordingly, we affirm. Each party is to bear its own costs of this appeal.
AFFIRMED.